FILED

JUN 1 3 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          _____          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANJANA DAS,<br><br>                 Plaintiff,<br><br>v.<br><br>TELEFLEX, INCORPORATED<br>and GARY GILL,<br><br>                 Defendants. | Case No.: 17-cv-2351-WQH-MDD<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss (ECF No. 5) filed by Defendants Gary Gill and Teleflex, Incorporated.

I. **Background**

On September 29, 2017, Plaintiff Ranjana Das initiated this action by filing the Complaint (ECF No. 1-4) against Defendants Gary Gill and Teleflex, Incorporated ("Teleflex") in the Superior Court of the State of California. The Complaint brings ten causes of action. Compl. at 1. The Complaint's second cause of action is for harassment based on disability and medical condition, and is brought against Gill and Teleflex. *Id.* at 11. The Complaint's sixth cause of action is for harassment based on age, religious creed, ancestry, and marital status, and is also brought against both Gill and Teleflex. *Id.* at 18.

On November 20, 2017, the Defendants removed the case to this Court. (ECF No. 1). On November 27, 2017, the Defendants filed the Motion to Dismiss (ECF No. 5). The Motion to Dismiss seeks dismissal of Das's second cause of action for harassment based on disability and medical condition and Das's sixth cause of action for harassment based on age, religious creed, ancestry, and marital status. *Id.* On April 4, 2018, Das filed an Opposition to the Motion to Dismiss. (ECF No. 15). On April 11, 2018, the Defendants filed a Reply in Support of the Motion to Dismiss. (ECF No. 17).

On April 10, 2018, Das and the Defendants filed a document "stipulat[ing] pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) to a dismissal without prejudice of the following causes of action: (1) The second and sixth cause of action as to Defendant Gary Gill[ and] (2) The second cause of action as to Defendant Teleflex." (ECF No. 16 at 2). The only claim challenged by the Motion to Dismiss that remains pending after the Joint Stipulation of Dismissal (ECF No. 16) is Das's claim against Teleflex for harassment based on age, religious creed, ancestry, and marital status.

## II.    Allegations

Das "is a 58[-]year[-]old Asian Indian woman .... She is a follower of the Radha Soami movement, a religious sect that prohibits consuming alc[]ohol, meat, and any animal products." Compl. at ¶ 14.

> On May 4, 2014, Plaintiff was offered employment by TELEFLEX as a Medical Device Telesales Coordinator, reporting to Defendant GILL, the Director of Training and Inside Sales. . . . [T]hroughout her employment with TELEFLEX, Plaintiff performed her required duties beyond expectations and consistently met sales goals and other criteria established by the company.

*Id.* at ¶ 16.

> Plaintiff wished to change her career path to focus on inside sales. When a position in Anesthesia in Inside Sales opened up in September of 2014, Plaintiff applied for the job and interviewed with Defendant director Gary Gill, her ultimate supervisor, for the position. The person who was ultimately hired to take the position she interviewed for was a Caucasian male . . . named Griffin Dunzar, with no medical sales background and no clinical sales experience. After Plaintiff found out that the position was filled, she asked Defendant GILL why she was ruled out for the Anesthesia position

2

in favor of Mr. Dunzar. Defendant GILL[,] who referred to Plaintiff as "mature[,]" stated that he preferred to hire young people who are starting their lives and that Mr. Dunzar reminded him of himself when he started at TELEFLEX: "He is young, starting a family . . . his family lives in Newport Beach . . . he is getting a boat and I want us to be able to enjoy, have a beer, and be with our families on Griffin's boat when he gets it."

In total, Defendant GILL rejected Plaintiff's request to transfer to an Anesthesia Inside Sales representative position on four occasions. Each time he hired a younger yet inexperienced representative, including: Griffin Dunzar, a white male, age 30, with no medical sales experience; James Burnmeister, a white male, age 28; Stacy Sinosohn, a white 27[-]year[-]old female with no medical device sales experience; and Jason Schuman, a white male in his early 20s, with no medical sales experience.

*Id.* at ¶¶ 17–19 (omissions in original).

PLAINTIFF was made to feel unwelcome from company celebrations because most, if not all, of the picnics, parties and meals featured drinking and exclusively non-vegetarian food, even the salads, completely limiting Plaintiff's ability to participate in such events. On one occasion, Defendant GILL, knowing that Plaintiff was a vegetarian, booked a table for a dinner for the sales team at a Brazilian steakhouse, calling Plaintiff a "real trooper."

*Id.* at ¶ 28. On one occasion, "as Defendant GILL was going to his office, he remarked to Plaintiff, 'Hey, you have to drink to work in Anesthesia.' Plaintiff did not say anything, but the entire sales team applauded and cheered loudly." *Id.* at ¶ 26.

[W]hen Plaintiff changed her last name from Litch to Das to signify her commit[]ment to her Radha Soami faith, [Michelle] Cassie and Beryl Hodgin, [] Respiratory [M]anager[s] at TELEFLEX, asked Plaintiff why she changed her last name. Plaintiff replied that she did so because the name "Das" meant ["]servant of God["] in Hindi, and it was conducive for her spiritual experience and path. In response, Ms. Hodgin and Ms. Cassie mocked Plaintiff and her name, and giggled to each other, "yeah, she's a servant all right." Plaintiff felt terribly humiliated and targeted for being different in race, age, and faith from her colleagues.

*Id.* at ¶ 22.

On March 4, 2015, Plaintiff made a complaint to Defendant GILL about the continuous rude and demeaning actions by Ms. Cassie and Ms. Hodgin toward Plaintiff which were directed at her faith and race. In response, Defendant GILL reiterated the previous comments he made about preferring employees who have children of their own, and with whom he can share a beer [].

3

*Id.* at ¶ 23.

> At [a] training [in North Carolina], Ms. Hodgin[] put her arm around Whitney, an engineer who is Caucasian, and said "This is Whitney. She is an engineer. And now here we have this . . ." and pointed to Prashant, the Indian engineer who had been participating in training, clearly indicating her disdain for the non-Caucasian employee. Plaintiff felt humiliated that people of Indian[ ]origin[] like herself were being mocked, and nodded her head in disbelief that Ms. Hodgin would say such a thing.

*Id.* at ¶ 24 (omission in original). "[A]fter returning from the North Carolina training, Plaintiff made another complaint to Defendant GILL to inform him about Ms. Hodgin's comments." *Id.* at ¶ 25.

> Plaintiff asked Defendant GILL if he could transfer her out of Respiratory because she did not want to be subjected to the hostility and pejorative comments concerning her ethnicity or religion, under Ms. Cassie and Ms. Hodgin. Defendant GILL smirked and said that he would speak to them, and said that he did not have any open positions in any other division, and that Plaintiff should get back to work so he could get back to his.

*Id.* "On one occasion Defendant GILL allowed the hostility towards Plaintiff from Ms. Caissie[1] and Ms. Hodges[2] to not only escalate but encouraged the behavior by allowing Ms. Hodges to systematically and consistently assign some of Plaintiff's high dollar accounts to field agents." *Id.* at ¶ 28.

> On June 30, 2015, Plaintiff was presented with a Performance Improvement Plan by Ms. Cassie. The report was riddled with errors and factually untrue particularly with regard to Plaintiff's past performance. Specifically, Plaintiff's performance had never been previously discussed or questioned. Moreover, she had continually performed over her mandated quota and, for the prior three months, she exceeded her goals with April at 105%, May at 105.8%, and June at 101.3%.

*Id.* at ¶ 30.

---

[1] The Complaint alternates between two spellings of Michelle's last name: "Cassie" and "Caissie." The Court will refer to Michelle Cassie.

[2] The Complaint alternates between two spellings of Beryl's last name: "Hodgin" and "Hodges." The Court will refer to Beryl Hodgin.

4

## III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## IV. Discussion

The Defendants contend that Das has failed to state a claim against Teleflex for harassment based on age, religious creed, ancestry, and marital status. (ECF No. 5-1 at 5–8). The Defendants contend that

> [Das] has only alleged a "few isolated incidents" and thus has not met her burden of stating facts that reflect that Gill or any other Teleflex employee engaged in conduct, based on Plaintiff's age, . . . religious creed, ancestry and marital status, that was severe or pervasive, much less sufficiently severe or pervasive, so as to alter the conditions of employment and create an abusive working environment.

*Id.* at 8 (quoting *McKenna v. Permanente Medical Group, Inc.*, 894 F. Supp. 2d 1258, 1281 (E.D. Cal. 2012)).

Das contends that she has stated a claim against Teleflex for harassment based on age, religious creed, ancestry, and marital status in violation of California Government Code § 12940(j). (ECF No. 15 at 3–5). Das contends that,

> [t]aken together, the facts pled can be deemed to be a continuous pattern of incidents of harassment that could allow a reasonable person in the Plaintiff's position, namely someone of Indian[ ]origin, who belongs to a minority religion whose colleagues were aware that she belonged to these protected classifications, to plausibly feel that she was harassed on account of her membership in a protected class, including on account of her ancestry and religion.

*Id.* at 5.

California Government Code § 12940(j)(1) makes it unlawful for an employer to harass an employee because of the employee's age, religious creed, ancestry, or marital status. Cal. Gov't Code § 12940(j)(1). To state a claim for harassment under § 12940(j)(1), the acts allegedly constituting harassment "cannot be occasional, isolated, sporadic, or trivial[;] rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc.*, 980 P.2d 846, 851 (Cal. 1999) (quoting *Fisher v. San Pedro Peninsula Hosp.*, 262 Cal. Rptr. 842, 852 (Cal. Ct. App. 1989)).

> Whether the conduct of the alleged harassers was sufficiently severe or pervasive to create a hostile or abusive working environment depends on the totality of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Common sense, and an appropriate sensibility to social context, will enable courts and juries to distinguish between simple teasing or roughhousing and conduct that a reasonable person in the plaintiff's position would find severely hostile or abusive. As in sex-based harassment claims, the plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that he or she was actually offended.

*Rehmani v. Superior Court*, 139 Cal. Rptr. 3d 464, 469 (Cal. Ct. App. 2012) (alterations, omissions, and quotations omitted).

17-cv-2351-WQH-MDD

Das contends that the following acts constitute a pattern of harassment against her on account of her status as a single, fifty-eight-year-old Asian Indian member of the Radha Soami religious sect (which prohibits consuming alcohol and animal products):

1. Gill's rejection of Das's four requests to transfer to an Anesthesia Inside Sales Representative position in favor of four white candidates age thirty or under, Compl. at ¶ 19;

2. Gill's explanation for rejecting one of Das's requests to transfer in favor of Griffin Dunzar, during which he stated that Das was "mature," that "he preferred to hire young people," that "Dunzar reminded him of himself," and that he wanted to "have a beer" and spend family time with Dunzar; *id.* at ¶ 18;

3. Teleflex's company-sponsored social events, which "featured drinking and exclusively non-vegetarian food," *id.* at ¶ 28;

4. Gill's remark to Das that "you have to drink to work in Anesthesia," after which "the entire sales team applauded and cheered loudly," *id.* at ¶ 26;

5. Comments made by Hodgin and Cassie mocking Das's name change, *id.* at ¶ 22;

6. An incident during which Hodgin put her arm around a white engineer and said "This is Whitney. She is an engineer. And now here we have this . . ." then pointed to an Indian engineer in a manner that "clearly indicat[ed] her disdain for the non-Caucasian employee," *id.* at ¶ 24 (omission in original);

7. Hodgin's "systematic[] and consistent[] assign[ment of] some of Plaintiff's high dollar accounts to field agents," which occurred with Gill's permission, *id.* at ¶ 28;

8. Gill's responses to Das's complaints about Hodgin and Cassie, which included smirking and "reiterated the previous comments he made about preferring employees who have children of their own, and with whom he can share a beer," *id.* at ¶¶ 23, 25; and

9. Cassie's Performance Improvement Plan for Das, which "was riddled with errors and factually untrue," *id.* at ¶ 30.

7

Accepting all of Das's allegations as true and drawing all reasonable inferences in Das's favor, Das has alleged conduct that is "sufficiently severe or pervasive to create a hostile or abusive working environment." *Rehmani*, 139 Cal. Rptr. 3d at 469. It is plausible that the alleged conduct "would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee." *Id.* It is reasonable to infer that Das was offended by the alleged conduct. *See id.*; Compl. at ¶ 22 ("Plaintiff felt terribly humiliated and targeted for being different in race, age, and faith from her colleagues."), ¶ 24 ("Plaintiff felt humiliated . . . ."); ¶ 28 ("PLAINTIFF was made to feel unwelcome from company celebrations . . . ."). The Court finds that Das has "alleged a concerted pattern of harassment of a repeated, routine or a generalized nature" not merely "occasional, isolated, sporadic, or trivial" conduct. *Aguilar*, 980 P.2d at 851 (quoting *Fisher*, 262 Cal. Rptr. at 852).

## V.    Conclusion

The Motion to Dismiss (ECF No. 5) is DENIED.

DATED:    6/12/18

_____
**WILLIAM Q. HAYES**
United States District Judge